**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |
|---|---|
| **TERRI BONNY, JEROME BRAMLETT, JESSICA DINGLE, TONGE A. ENGLISH, LATONYA Z. GREEN, KAREN KEATON, SHARON LAKE, ROBIN LEE, ONIKA LOPEZ, STEPHANIE D. MARSHALL, KRYSTINE MAYNARD, SAMANTHA MAYNARD, VERA J. MCADOO, TARYN MCFARTHING, ANTHONY K. MENSAH, EVELYN MOORE, HAYDEE NUÑEZ-GELLINEAU, DANESE SIMPKINS, JENNIFER SOLARSH, NADIA TORRES, SHALECE UPSHUR, and NICHOLE C. WHITEMAN,** | **Civil Action No. 1:16-cv-03150-WSD** |
| **On behalf of themselves and all others similarly situated** | |
| **Plaintiffs,** | |
| **vs.** | |
| **BENCHMARK BRANDS, INC.,** | |
| **Defendant.** | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

COME NOW Plaintiffs, by and through the undersigned counsel and,

pursuant to Fed. R. Civ. P. 55(b)(2), hereby move for entry of a default judgment

against Defendant Benchmark Brands, Inc. ("Benchmark"), on behalf of themselves and others similarly situated, showing the Court as follows:

## I.    INTRODUCTION

The Plaintiffs in this lawsuit ("the Named Plaintiffs") are twenty-two (22) former Benchmark employees.   They bring this putative class action against Benchmark, on their own behalf and on behalf all others similarly situated ("the Judgment Class"), alleging a single violation of the WARN Act, 29 U.S.C. § 2101, *et seq.*

The Named Plaintiffs allege that on August 11, 2016, Benchmark terminated its entire workforce—*i.e.*, every member of the proposed Judgment Class—without giving *any* of them the advance written notice required by the WARN Act. Contemporaneously with the filing of this Motion for Default Judgment, the Named Plaintiffs move for certification of a Judgment Class.

Benchmark has not appeared in this case or responded to the Named Plaintiffs' Complaint. Accordingly, on March 10, 2017, this Court entered default against Benchmark. As of the date of this filing, Benchmark still has not appeared in this case nor has it moved to open default.

By defaulting, Benchmark has admitted to all the well-pled allegations of the Named Plaintiffs' class action complaint. All that remains is calculating the

2

damages to which the Named Plaintiffs, and the other members of the Judgment Class, are entitled.

As shown herein, those damages are capable of precise calculation and should be awarded. The WARN Act entitles aggrieved parties to recover back pay and benefits for the statutory-notice-period, plus prejudgment interest. The Act provides rules for calculating the back-pay damages and those calculations are straightforward.

Here, the damages suffered by the Judgment Class can be easily calculated using Benchmark's payroll records. In support of this Motion, the Named Plaintiffs submit the Declarations of Plaintiffs Danese Simpkins and Shalece Upshur ("the Declarants"), Benchmark's former Human Resource Director and Payroll Manager, respectively. (Declaration of Danese Simpkins ("Simpkins Dec."), attached hereto as Exhibit "A"; Declaration of Shalece Upshur ("Upshur Dec.), attached hereto as Exhibit "B.").

By virtue of their former positions with Benchmark, the Declarants have personal knowledge of Benchmark's payroll practices, as well as access to financial and payroll records from which the back pay and benefits owed to each "aggrieved employee" can be calculated with precision. (*See generally* Simpkins Dec. & Upshur Dec.) From these records, the Declarants can, and have, calculated

the Judgment Class members' damages precisely. (*Id.*) Prejudgment interest on the Judgment Class members' statutory damages is also easily calculated, as shown below.

Accordingly, for the reasons set forth herein, the Named Plaintiffs, on their own behalf, and on behalf of the members of the proposed Judgment Class, respectfully request that the Court enter a Default Judgment against Benchmark in the total amount of **$2,458,031.96**, plus prejudgment interest through the date of this filing of **$24,890.10** (which will continue to accumulate, through the date of Judgment, at a rate of **$80.81** per day).

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 11, 2016 Benchmark notified *all* of its employees (including all the Named Plaintiffs and the other members of the Judgment Class)—for the first time and without prior notice—that it was immediately ceasing all operations and terminating their employment.  (Complaint, ¶¶ 6-7 & Ex. A.)

On the same day, Benchmark issued final paychecks to its employees (including the Named Plaintiffs and the other members of the Judgment Class), which covered wages previously earned but which did not include any additional amount as "severance" or compensation paid in lieu of the required sixty days-notice.  (*Id.*, ¶¶ 13, 16.)

Benchmark admitted in a letter issued to its employees on August 11, 2016 (the date of termination) that it failed to provide them with the sixty (60) days-notice required by the WARN Act. (Complaint, Ex. A.)  Benchmark asserted in the letter that it could not provide such notice because its creditors made an abrupt decision to foreclose on its debt and take possession of its assets.  (*Id*., ¶ 8 & Ex. A.)  The Named Plaintiffs allege, however, that Benchmark was actively negotiating the transactions that resulted in the company's "abrupt" closure more than sixty (60) days prior to August 11, 2016.  (*Id*., ¶ 10.)

The Named Plaintiffs allege that Benchmark's termination of its entire workforce on August 11, 2016, constituted a "plant closing" or "mass layoff" within the meaning of the WARN Act.  (*Id*., ¶ 14.)  Accordingly, Plaintiffs allege, Benchmark was required to notify its employees of the plant closing/mass layoff sixty (60) days prior to termination.  (*Id*., ¶ 21.)  Thus, the Named Plaintiffs allege that Benchmark's August 11, 2016 letter, which Benchmark issued to its employees on the same day it terminated them, was untimely, ineffective, and violated the WARN Act.  (*Id*., ¶ 20.)

The Named Plaintiffs seek statutory damages for Benchmark's WARN Act violations on their own behalf, and on behalf of the other members of the Judgment Class.  (Complaint, ¶ 22.)  Specifically, the Named Plaintiffs seek to recover, for

themselves and for the members of the Judgment Class, the amount of wages and benefits (consisting of medical and dental insurance premiums) that they would have received during the sixty (60) day notice period, plus prejudgment interest on the amount owed.  (*Id.*, ¶¶ 22-24.)

On August 26, 2016, the Named Plaintiffs filed the instant class action Complaint.  (Complaint.)  On September 12, 2016, the Named Plaintiffs filed their proof of service on Benchmark.  (Proof of Service, Doc. No. 3.)  When Benchmark failed to appear or respond to the Named Plaintiffs' Complaint, the Named Plaintiffs, on November 28, 2015, moved for entry of default.  (Motion for Default Judgment, Doc. No. 4.)

On March 10, 2017, this Court entered an "Opinion and Order" finding Benchmark in default and directing the Clerk of Court to enter default against it. (Opinion and Order, Doc. No. 6.)    The Clerk of Court entered default against Benchmark on March 13, 2017.  Since that time, Benchmark has not appeared in the case, sought to open default, or otherwise responded to Plaintiffs' allegations.

### III.    ARGUMENT AND CITATIONS OF AUTHORITY

#### A. Standard for Entry of Default Judgment Under Rule 55(b)(2).

Entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 55.  Rule 55(b)(2) allows a party to "apply to the

court for a default judgment" against a defaulting defendant.   Fed. R. Civ. P. 55(b)(2).

Rule 55(b)(2) vests district courts with "broad discretion" to determine whether to enter a default judgment, and such decisions are reviewed for abuse of discretion. *C&M Inv. Group, Ltd. v. Campbell*, 448 Fed. Appx. 902, 904 & 906 (11th Cir. 2011); *accord Hamm v. DeKalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985) ("The entry of a default judgment is committed to the discretion of the trial court.")

The following rules govern a district court's consideration of a motion for default judgment:

> When considering a motion for default judgment the Court must first "investigate the legal sufficiency of the allegations of the plaintiff's complaint" to determine whether it adequately pleads a claim for relief.   Next, the Court may conduct hearings on the amount of damages.   However, an evidentiary hearing for a determination of damages is not always required; rather, it is a decision that is left to the discretion of the Court. The Eleventh Circuit instructs that entry of a default judgment without first conducting an evidentiary hearing on the amount of damages is appropriate "where all essential evidence is already of record."

*Gibson v. Kirkwood Bar & Grill, LLC*, No. 1:13-CV-00308-JEC, 2014 WL 632357, at *1–2 (N.D. Ga. Feb. 18, 2014) (internal citations omitted).

**B. Entry of a Default Judgment Against Benchmark is Appropriate.**

Here, the Complaint properly alleges a WARN Act violation and the evidence submitted by the Named Plaintiffs justifies an award of damages without the need for an evidentiary hearing.

1. The Complaint's Allegations Are Legally Sufficient.

The WARN Act "provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs." 20 CFR § 639.1(a). "Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." *Id.*

The WARN Act allows "aggrieved employees" who suffer an "employment loss" to file a civil action against an "employer" that orders a "plant closing" or "mass layoff" without giving its employees 60-days advance notice. *See* 29 U.S.C. § 2104(a). The Act specifically provides that "[a] person seeking to enforce such liability . . . may sue either for such person *or for other persons similarly situated, or both*, in any district court . . . in which the violation is alleged to have occurred, or in which the employer transacts business." *Id.*, § 2104(a)(5) (emphasis added).

8

The Act defines an "aggrieved employee" as "an employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply [with the statutory notice requirement], did not receive timely notice . . ."  29 U.S.C. § 2104(a)(7).  This includes "managerial and supervisory employees, but does include business partners."  20 C.F.R. § 639.3(e).

The Act defines "employment loss" as, *inter alia*, an "employment termination, other than a discharge for cause, voluntary departure, or retirement." 29 U.S.C. § 2104(a)(6).

The Act defines an "employer" as*, inter alia,* "any business enterprise that employs . . . 100 or more employees."  29 U.S.C. § 2101(a)(1)(A).

The Act defines a "plant closing" to mean "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment."  29 U.S.C. § 2101(a)(2).  The Act defines a "mass layoff" as, *inter alia*, a reduction in force (not the result of a plant closing) that "results in results in an employment loss at the single site of employment during any 30-day period for . . . at least 33 percent of the employees . . . and at least 50 employees."  29 U.S.C.A. § 2101(a)(3)(A)-(B).

Here, the Named Plaintiffs' properly allege a class-wide WARN Act violation.  Plaintiffs allege that, on August 11, 2016, Benchmark immediately terminated *all* of its employees without providing *any* of them with the advance warning required by the WARN Act. (Complaint, ¶¶ 6-7.) Thus, the Named Plaintiffs, and the others upon whose behalf they sue, constitute "aggrieved employees" who suffered "employment loss" within the meaning of the Act.  *See* 29 U.S.C. §§ 2104(a)(5)-(7).

The Named Plaintiffs allege that Benchmark employed at least 230 employees at facilities in Atlanta, Georgia and Memphis, Tennessee, such that Benchmark qualifies as an "employer" under the WARN Act.  (Complaint, ¶¶ 3, 12, 27.)   Additionally, as the Complaint shows, Benchmark gave a purported (albeit ineffective) "WARN Act Notice" to its employees (on the same day it terminated them), reflecting Benchmark's acknowledgement that the Act applied to it.  (*Id.*, Ex. A.)

The Complaint alleges that Benchmark's mass layoff of its entire workforce on August 11, 2016—which resulted in the termination of *all* employees at Benchmark's Georgia and Tennessee facilities—constituted a "plant closing" and/or "mass layoff" within the meaning of the Act.  (Complaint, ¶¶ 2-3, 6, 12, 14, 18 & Ex. A.)

Accordingly, as the Complaint alleges, the Judgment Class members were entitled to receive, and Benchmark was required to provide them with, sixty (60) days' advance notice of the mass layoff.  (Complaint, ¶¶ 14, 19.)  In its defective August 11, 2016 "WARN Act Notice," Benchmark acknowledges the existence of this obligation.  (*Id.*, Ex. A.)

The Complaint alleges that Benchmark failed to provide the Judgment Class members with sixty (60) days advance notice of the mass layoff as required by law; instead, it notified them of their terminations at on the same day it fired them.  (Complaint, ¶¶ 6-7, 12, 19-20 & Ex. A.)  Further, Benchmark made no payments to any Class Members in consideration of its failure to provide the statutorily-required notice.  (*Id.*, ¶¶ 13, 16.)

The Complaint alleges that, due to Benchmark's failure to provide the statutorily-required notice, the Judgment Class members are entitled to recover from Benchmark damages equal to the amount of wages and benefits they would have received during the sixty (60) day notice period. (Complaint, ¶¶ 1, 22.)  The Complaint also alleges that the Judgment Class Members are entitled to recover prejudgment interest.  (*Id.*, Prayer for Relief, ¶ (b)).

Because Benchmark has defaulted, it admits all well-pled allegations of the Named Plaintiffs' Complaint.  *See Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th

Cir. 2015) ("When a defendant defaults, he 'admits the plaintiff's well-pleaded allegations of fact.'") (citations omitted).

Here, because the Complaint alleges all of the elements of a WARN Act violation, and because Benchmark admits to those allegations (by virtue of their default and by virtue of the admissions contained in the "WARN Act Notice" attached as Exhibit "A" to Plaintiffs' Complaint), the Complaint properly states a claim for relief and default judgment should be entered.

2. <u>Damages Can Be Determined Based on the Evidence That Plaintiffs Present in Support of this Motion.</u>

The Court need not conduct an evidentiary hearing in this case because the Court can calculate the Judgment Class members' damages, with precision, using the evidence the Declarants submit in support of this Motion.  Here, Plaintiffs seek to recover the back pay and benefits to which they are statutorily entitled, plus prejudgment interest on that amount.  Each of those categories of damages can be calculated precisely without the need for an evidentiary hearing.

As shown in the attached Declarations and accompanying exhibits, the Judgment Class consists of two hundred twenty-seven (227) former Benchmark employees, all of whom Benchmark terminated on August 11, 2016.  (Simpkins Dec., ¶¶ 3-6; Upshur Dec., ¶¶ 3-6.) These workers consisted of hourly and salaried full-time and part time employees in Benchmark's Atlanta and Memphis facilities.

(Simpkins Dec., ¶¶ 3-6 & Ex. 1; Upshur Dec., ¶¶ 3-6 & Ex. 1.) Plaintiffs' submissions identify each employee by name, title, and the location where he or she worked.  (*Id.*)

Among the two-hundred twenty (227) "aggrieved employees" who Benchmark terminated on August 11, 2016, and who comprise the Judgment Class, all of them are entitled to back pay.  (Simpkins Dec., ¶¶ 6-9 & Ex.1; Upshur Dec., ¶¶ 6-9 & Ex. 1.)  For two-hundred nineteen of them (219), their back pay also includes accumulated but unused vacation days for which they are entitled to compensation.  (Simpkins Dec., ¶¶ 10-12 & Ex. 2; Upshur Dec., ¶¶ 10-13 & Ex. 2.)  One hundred seventy-three (173) of the Judgment Class members were receiving, and are entitled to recover, medical benefits.  (Simpkins Dec., ¶¶ 13-14 & Ex. 3; Upshur Dec., ¶¶ 14-15 & Ex. 3.)  Finally, one hundred seventy-nine (179) of the Judgment Class members were receiving, and are entitled to recover, dental benefits.  (Simpkins Dec., ¶¶ 15-16 & Ex. 4; Upshur Dec., ¶¶ 16-17 & Ex. 4.)

Plaintiffs discuss, and total, each category of damages separately, below, and also explain the methodology the Declarants used to calculate those categories of damages.  Additionally, Plaintiffs total the damages owed to each Judgment Class member on an individualized basis, based on the type and amount of damages that each of them is entitled to recover.

i.      *Back Pay and Vacation Pay Damages.*

The WARN Act provides that an employer who violates Section 2102 "shall be liable to each aggrieved employee who suffers an employment loss" for "back pay for each day of violation at a rate of compensation not less than the higher of . . . (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or (ii) the final regular rate received by such employee." 29 U.S.C. § 2104(a)(1)(A)(i)-(ii).

Pay in lieu of unused vacation time is recoverable under the WARN Act. *See, e.g.*, *Gorini v. AMP, Inc.*, 94 Fed. Appx. 913, 921 (3d Cir. 2004) (affirming district court's holding that WARN Act plaintiff "was entitled to pay in lieu of vacation time he did not use").

Back pay liability "shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer." *Id.*, § 2104(a)(1).

Here, all two-hundred twenty (227) members of the Judgment Class are entitled to back pay.  (Simpkins Dec., ¶¶ 6-9 & Ex. 1; Upshur Dec., ¶¶ 6-9 & Ex. 1.)  Additionally, two-hundred nineteen of them (219) had accumulated unused vacation days for which they would be, and are, entitled to compensation. (Simpkins Dec., ¶¶ 10-12 & Ex. 2; Upshur Dec., ¶¶ 10-13 & Ex. 2.)

With respect to the Declarants' back pay calculation, their submissions identify each Class member by his or her name and hourly rate of pay at the time of termination (or "final regular rate" of pay within the meaning of 29 U.S.C. § 2104(a)(1)(A)(ii)).  (*Id.*)  For salaried employees, Plaintiffs calculated their final regular rate of pay by dividing their annual salary by 2080 hours for the year, which is the method Benchmark used to calculate annual salaries. (*Id.*)

Plaintiffs then multiplied each full-time employee's final regular hourly rate of pay by (a) forty-two (42) days; and (b) eight (8) hours per day for a total of three hundred thirty six (336) hours. (Simpkins Dec., ¶ 8 & Ex. 1; Upshur Dec., ¶8 & Ex. 1.)  Plaintiffs multiplied each permanent part-time employee's final regular hourly rate of pay by (a) forty-two (42) days; and (b) five (5) hours a day for a total of two hundred ten (210) hours.  (Simpkins Dec., ¶ 8 & Ex. 1; Upshur Dec., ¶8 & Ex. 1.)

Plaintiffs used forty-two (42) days as the multiplier because it constitutes the number of working days (Monday-Friday) within the sixty (60) day notice period. *See, e.g., Weekes-Walker v. Macon County Greyhound Park, Inc.*, 31 F. Supp.3d 1354, 1359 (M.D. Ala. 2014) ("Plaintiffs correctly calculated the back pay on the basis of the number of days an employee would have worked within a sixty day period as opposed to the number of calendar days within a sixty-day time period.").

In other words, the Class Members would have worked forty-two (42) days during the sixty-day notice period had notice been provided.  Plaintiffs used eight (8) and five (5) hours a day as the multiplier based on the regular business hours that Benchmark kept and the regular hours that its full- and part-time employees worked.

Additionally, Plaintiffs calculated the Judgment Class members' accrued vacation time at the time of termination.   (Simpkins Dec., ¶¶ 10-12 & Ex. 2; Upshur Dec., ¶¶ 10-13 & Ex. 2.)  Plaintiffs based their calculation on (a) the amount of accrued but unused vacation accumulated by the Judgment Class Members; multiplied by (b) each employee's final regular rate of pay.  (*Id.*)

Plaintiffs' calculations yielded a total figure of **$2,340,150.54**, comprised of (a) back wages of **$2,050,598.21**; and (b) vacation pay of **$289,552.33.**

ii.    *Medical and Dental Benefits Damages.*

The WARN Act provides that an employer who violates Section 2102 "shall be liable to each aggrieved employee who suffers an employment loss" for "benefits under an employee benefit plan . . . which would have been covered under an employee benefit plan if the employment loss had not occurred."  29 U.S.C. § 2104(a)(2).

Again, "[s]uch liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer." *Id.*, § 2104(a)(1).

Here, Benchmark subsidized the health care coverage of one-hundred seventy-three (173) Judgment Class members.  (Simpkins Dec., ¶¶ 13-14 & Ex. 3; Upshur Dec., ¶¶ 13-14 & Ex. 3.)  That is, as the Declarants' submissions show, Benchmark covered a portion of those Class members' monthly health care premiums.  (*Id.*)

Additionally, Benchmark subsidized dental insurance coverage of one hundred seventy-nine (179) Judgment Class members. (Simpkins Dec., ¶¶ 15-16 & Ex. 4; Upshur Dec., ¶¶ 16-17 & Ex. 4.)  That is, Benchmark covered a portion of those Class members' monthly dental insurance premiums.  (*Id.*)

Plaintiffs' submissions identify by name each Class Member whose monthly health care and/or dental premiums Benchmark subsidized.  (Simpkins Dec., ¶¶ 13, 15 & Exs. 3-4; Upshur Dec., ¶¶ 14, 16 & Exs. 3-4.) They also identify, with respect to each such employee, the amount of monthly premium that Benchmark paid. (*Id.*)

For each Class Member who was receiving health or dental benefits, the Declarants calculated his/her medical and/or dental benefits damages by

17

multiplying (a) the amount of monthly premium Benchmark paid on behalf of each such Class Member; by (b) a time period of two (2) months.  (Simpkins Dec., ¶¶ 13-15 & Exs. 3-4; Upshur Dec., ¶¶ 14-16 & Exs. 3-4.)  This calculation equals the amount of medical and dental premiums that Benchmark would have, and should have, paid on behalf of those Class Members whose health and dental insurance the company subsidized.  (*Id.*)

Plaintiffs' calculation yielded a total of **$113,911.42** in medical benefits damages, and **$3,970.00** in dental benefits damages.

### iii.    *Prejudgment Interest.*

Plaintiffs in WARN Act cases are also entitled to recover prejudgment interest.  *Weekes-Walker v. Macon County Greyhound Park, Inc.*, 31 F. Supp.3d 1354, 1359 (M.D. Ala. 2014).  The Treasury Rate as set out in the federal post-judgment interest rate statute, 28 U.S.C. § 1961(a), is an appropriate interest rate to use when calculating prejudgment interest on a WARN Act claim.  *Id.* at 1359-1360 (citations omitted).  Under Section 1961, "[s]uch interest shall be calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System . . ."  28 U.S.C. § 1961(a).

As of the date of this filing, the average 1-year constant maturity Treasury yield rate is 1.2%.   Three-hundred eight (308) days have passed since August 11, 2016, when Benchmark committed its WARN Act violation.   Total damage for back pay, vacation pay, health care benefits and dental benefits amount to **$2,458,031.96**.   As of the date of this filing, prejudgment interest of **$24,890.10** has accrued on this amount.   That equates to **$80.81** in daily prejudgment interest, which will continue to accrue until Judgment is entered.

## IV.   CONCLUSION

Based on the foregoing, the Named Plaintiffs, on behalf of themselves and the members of the Judgment Class, respectfully request that the Court enter a default judgment against Benchmark Brands in the total amount of at least **$2,482,922.06**,[1] which represents:

a)  Back pay damages of **$2,050,598.21;**

b)  Vacation pay damages of **$289,552.33;**

c)  Medical benefits damages of **$113,911.42;**

---

[1] Plaintiffs' Exhibit "C" is a spreadsheet that identifies the types and amounts of damages owed to each Class Member.   (Damages Spreadsheet, Exhibit "C.") While Plaintiffs aggregate the Plaintiffs' collective damages, by category, for purposes of this Motion, Exhibit "C" addresses each Class Member's damages on an individualized basis, showing the category (or categories) of damage to which each Judgment Class member is entitled as well as the amount of such damages. (*Id.*)

d) Dental benefits damages of **$3,970.00;** and

e) Prejudgment interest of at least **$24,890.10**, with prejudgment interest continuing to accrue at a rate of **$80.81**/day until Judgment is entered.

A proposed Order, addressing this Motion for Default Judgment and Plaintiffs' contemporaneously-filed Motion for Class Certification is attached for the Court's convenience.

Respectfully submitted this 16th day of June, 2017.

FRIED & BONDER, LLC

*/s/ Joseph A. White*
David S. Fried
Georgia Bar No. 277319
Joseph A. White
Georgia Bar No. 754315

White Provision, Suite 305
1170 Howell Mill Rd. NW
Atlanta, GA 30318
Telephone: (404) 995-8808
Facsimile: (404) 995-8899

BRE LAW, LLC

/s/ Barbara R. Evans
Barbara R. Evans
 Georgia Bar No. 523083

P.O. Box 767492
Roswell, GA 30076
Phone: 678-369-3928
Facsimile: 888-270-0998

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **TERRI BONNY, JEROME BRAMLETT, JESSICA DINGLE, TONGE A. ENGLISH, LATONYA Z. GREEN, KAREN KEATON, SHARON LAKE, ROBIN LEE, ONIKA LOPEZ, STEPHANIE D. MARSHALL, KRYSTINE MAYNARD, SAMANTHA MAYNARD, VERA J. MCADOO, TARYN MCFARTHING,  ANTHONY K. MENSAH, EVELYN MOORE, HAYDEE NUÑEZ-GELLINEAU, DANESE SIMPKINS, JENNIFER SOLARSH, NADIA TORRES, SHALECE VESHUR, and NICHOLE C. WHITEMAN,** | **Civil Action No. 1:16-cv-03150-WSD** |
| **On behalf of themselves and all others similarly situated** | |
| **Plaintiffs,** | |
| **vs.** | |
| **BENCHMARK BRANDS, INC.,** | |
| **Defendant.** | |

## CERTIFICATION OF FONT SIZE

Counsel certifies that this Motion is prepared in Times New Roman 14

Point, one of the fonts approved in Local Rule 5.1C.

**FRIED & BONDER LLC**

*/s/ Joseph A. White*
Joseph A. White
Georgia Bar No. 754315

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **TERRI BONNY, JEROME BRAMLETT, JESSICA DINGLE, TONGE A. ENGLISH, LATONYA Z. GREEN, KAREN KEATON, SHARON LAKE, ROBIN LEE, ONIKA LOPEZ, STEPHANIE D. MARSHALL, KRYSTINE MAYNARD, SAMANTHA MAYNARD, VERA J. MCADOO, TARYN MCFARTHING,  ANTHONY K. MENSAH, EVELYN MOORE, HAYDEE NUÑEZ-GELLINEAU, DANESE SIMPKINS, JENNIFER SOLARSH, NADIA TORRES, SHALECE VESHUR, and NICHOLE C. WHITEMAN,** | **Civil Action No. 1:16-cv-03150-WSD** |
|      **On behalf of themselves and all others similarly situated** | |
|        **Plaintiffs,** | |
| **vs.** | |
| **BENCHMARK BRANDS, INC.,** | |
|        **Defendant.** | |

## CERTIFICATE OF SERVICE

I hereby certify that I have on June 16, 2017, served a true and accurate copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** upon the following by depositing a

copy in the United States Mail with proper postage thereon and addressed as follows:

<table>
<tr><td>Benchmark Brands, Inc.<br>Alan Beychok, Registered Agent<br>560 Mountain Way<br>Atlanta, GA 30342</td><td>Benchmark Brands, Inc.<br>Alan Beychok, Registered Agent<br>1375 Peachtree Street NE, 6th Floor<br>Atlanta, GA 30309</td></tr>
</table>

**FRIED & BONDER, LLC**

/s/ Joseph A. White
David S. Fried
Georgia Bar No 277319
Joseph A. White
Georgia Bar No. 754315
Attorneys for Plaintiff

White Provision, Suite 305
1170 Howell Mill Road, NW
Atlanta, Georgia 30318
Phone: (404) 995-8808
Fax: (404) 995-8899

**BRE LAW, LLC**

/s/ Barbara R. Evans
Barbara R. Evans
Georgia Bar No. 523083

P.O. Box 767492
Roswell, GA 30076
Phone: 678-369-3928
Facsimile: 888-270-0998

23