## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TERRI BONNY, et al., on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

      v.

BENCHMARK BRANDS, INC.,

        Defendant.

1:16-cv-3150-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Amend Complaint to
Correct Misnomer [7] ("Motion to Amend"), Plaintiffs' Motion for Default
Judgment Against Defendant Benchmark Brands, Inc. [8] ("Motion for Default"),
and Plaintiffs' Motion for Class Certification [9] ("Motion for Class Cert.).

## I.    BACKGROUND

Plaintiffs are former employees of FootSmart, a division of Benchmark
Brands, Inc. ("Defendant").  ([1] at 1).  On August 11, 2016, Plaintiffs were
informed, for the first time, that Defendant was ceasing all operations and closing
all facilities effective immediately and that their employment was terminated as of

August 11, 2016. ([1] ¶ 6).  Plaintiffs were provided with a letter, also dated

August 11, 2016, from Defendant stating:

> TO ALL EMPLOYEES OF BENCHMARK BRANDS, INC.
>
> Re:    WARN Act Notice of Plant Closing
>
> Dear Employees:
>
> Pursuant to 20 C.F.R. 639.1(e), BENCHMARK BRANDS, INC. (the "Company") is providing you with this Notice consistent with the requirements of the federal Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101, *et seq.*
> The Company regrets to notify you that as of today, August, 11, 2016, it has ceased all operations and closed all facilities (i.e., all "plants") . . . .  As a result of these closing, as of today, August 11, your employment with the Company has ended and your layoff will be permanent. . . .
>
> Lastly, we want to explain to you why we could not provide this Notice 60 days prior to the closing, or even earlier than we have. Regrettably, the ceasing of business and closing of facilities is happening as the result of the Company's creditor foreclosing on our debt obligation and taking possession of its assets.  The finalization of this foreclosure did not occur until today, and upon such finalization, the credit is foreclosing immediately, necessitating termination of employees today.  There was no ability to forestall the foreclosure to allow it to provide 60 days prior notice to employees.
>
> [A] large portion of the Company's assets will be sold to The Walking Company, and The Walking Company intends to start a new business through a subsidiary of FootSmart, Inc. ("New FootSmart").  I anticipate that in the near future, representatives from New FootSmart may contact some of you about applying for a job with them.

([1.2] ("August 11, 2016, Letter") at 1).

Plaintiffs contend, "on information and belief," that, more than 60 days prior to August 11, 2016, Defendant was actively contemplating and/or negotiating the sale of its assets to The Walking Company and discussing a resolution of its indebtedness. (Id. ¶ 10). The Complaint concedes that, "[w]hile a small number of employees may have been re-hired by The Walking Company after August 11, 2016, they, along with approximately 200 other employees were terminated on August 11, 2016, and all suffered an 'employment loss[.]'" (Id. ¶ 12). Plaintiffs allege that none of the Plaintiffs or their co-workers received any type of additional, or "severance," payment upon their termination. (Id. ¶ 13). Plaintiffs received their final wage payments on the date of their termination, and "[t]hese final wage payments did not include any pay above [Plaintiffs] regular wages for time worked" or "any pay in lieu of the required sixty-day notice period." (Id. ¶ 16).

On August 26, 2016, Plaintiffs, on behalf of themselves and all others similarly situated, filed the Complaint alleging that Defendant violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. ("WARN" or "the Act"). Plaintiffs allege that their August 11, 2016, termination of employment at Benchmark constituted a "plant closing" or "mass layoff" under the WARN Act, 29 U.S.C. § 2101. ([1] ¶ 18). Plaintiffs contend that, under 29 U.S.C.

§ 2102(a)(1), Plaintiffs, and all other similarly situated employees, were entitled to receive written notification of their impending layoff sixty (60) days prior to their termination. (Id. ¶ 19). Plaintiffs state that they did not receive this required notification. (Id.). Plaintiffs allege that the Notice received by Plaintiffs on August 11, 2016, was ineffective Notice under the provisions of the WARN Act. (Id. ¶ 20). Plaintiffs seek to recover back pay, benefits, attorney's fees, and other relief. (Id. ¶¶ 22-24).

On November 28, 2016, Plaintiffs filed their initial Motion for Default Judgment [4]. On March 10, 2017, the Court—construing the motion as one seeking a clerk's entry of default against Defendant as required by Federal Rule of Civil Procedure 55(a)—granted the motion and directed the clerk to enter default. ([4] at 3-4). The clerk entered default on March 10, 2017.

On June 16, 2017, Plaintiffs filed the Motion to Amend seeking to correct a misnomer of one the Named Plaintiffs. The same day, Plaintiffs filed their Motion for Default Judgment and Motion for Class Certification. In their Motion for Class Certification, Plaintiffs seek certification of a class consisting of "[a]ny employee of [Defendant] terminated on August 11, 2016 who was not given a minimum of sixty (60) days-notice of termination and whose employment was terminated as a result of a 'mass layoff' or 'plant closing' as defined by the WARN Act." ([9.1] at

2).  In their Motion for Default Judgment, Plaintiffs contend that Defendant has not appeared or otherwise responded to the Complaint, the Complaint sufficiently alleges all of the elements of a WARN Act violation, and because Defendant admits to those allegations, default judgment should be entered.  ([8.1] at 12).

## II.    LEGAL STANDARDS

### A.    <u>Motion to Amend</u>

After the period permitting amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  <u>Id.</u>  That is, "[i]n the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

Where an amendment adds claims or defenses or adds or substitutes parties, a further burden is imposed.  Once a court determines that Rule 15(a) of the Federal Rules of Civil Procedure is satisfied, it must then decide whether such amendments "relate back" to the original pleading to be amended, thereby

avoiding any potential expiration of the statute of limitations period. Under Rule

15(c) of the Federal Rules of Civil Procedure, amendments that "change[ ] the

party or the naming of the party against whom a claim is asserted" relate back to

the date of the original pleading if certain requirements are met. Fed. R. Civ. P.

15(c)(1)(C). Those requirements are that the opposing party "(i) received such

notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it,

but for a mistake concerning the proper party's identity." Fed. R. Civ. P.

15(c)(1)(C)(i)-(ii).

Rule 15(c) does not, however, specifically address situations where the

moving party seeks to amend its own name. The Eleventh Circuit, following other

circuits, has held that the "extension of Rule 15(c)(3) to amendments involving

plaintiffs rests on solid ground." Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d

1113, 1132 (11th Cir. 2004). In other words, "[t]hough [Rule 15(c)(1)(C)]

technically references amendments that change the parties against whom claims

are asserted, [the Eleventh Circuit] have previously applied it to situations in which

new plaintiffs were added." Makro Capital of Am., Inc. v. UBS AG, 543 F.3d

1254, 1259 (11th Cir.2008). The Advisory Committee's Note, which the Eleventh

Circuit cites in Cliff, states:

The relation back of amendments changing plaintiffs is not expressly
treated in revised Rule 15(c) since the problem is generally easier.
Again the chief consideration of policy is that of the statute of
limitations, and the attitude taken in revised Rule 15(c) toward change
of defendants extends by analogy to amendments changing plaintiffs.

Fed. R. Civ. P. 15 Advisory Committee's Note to the 1996 Amendment. Rule

15(c)(1)(C) notice and knowledge requirements apply where the plaintiff seeks to

change the plaintiff's names or otherwise correct a misnomer in the plaintiff's

name. Makro Capital, 543 F.3d at 1259–60.

B.      Motion for Class Certification

"Before a district court may grant a motion for class certification, a plaintiff

seeking to represent a proposed class must establish that the proposed class is

'adequately defined and clearly ascertainable.'" Little v. T-Mobile USA, Inc., 691

F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733,

734 (5th Cir. 1970))[1].

If the plaintiff's proposed class is adequately defined and clearly

ascertainable, the plaintiff must then meet the requirements listed in Federal Rule

of Civil Procedure 23. Fed. R. Civ. P. 23. "A class action may be maintained only

when it satisfies all the requirements of Federal Rule of Civil Procedure 23(a) and

---

[1]      In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the
Eleventh Circuit adopted as binding precedent all decisions of the former Fifth
Circuit issued before October 1, 1981.

at least one of the alternative requirements of Rule 23(b)." <u>Jackson v. Motel 6</u>

<u>Multipurpose, Inc.</u>, 130 F.3 999, 1005 (11th Cir. 1997). Rule 23(a) requires a

plaintiff to demonstrate:

> (1) the class is so numerous that joinder of all members is
> impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of
> the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a). "Those four requirements are commonly referred to as the

prerequisites of numerosity, commonality, typicality, and adequacy of

representation, and they are designed to limit class claims to those fairly

encompassed by the named plaintiff's individual claims." <u>Piazza v. Ebsco Indus.,</u>

<u>Inc.</u>, 273 F.3d 1341, 1346 (11th Cir. 2001).

Where Rule 23(a) is satisfied, Rule 23(b) provides that a class action may be

maintained only where one of the three following requirements is met:

> (1) prosecuting separate actions by or against individual members of
> the class would create a risk of prejudice to the party opposing the
> class or to those members of the class not parties to the subject
> litigation;
>
> (2) the party opposing the class has acted or refused to act on grounds
> that apply generally to the class, so that final injunctive or declaratory

relief is appropriate respecting the class as a whole; or

(3) questions of law or fact common to the members of the class
predominate over any questions affecting only individual members,
and a class action is superior to other available methods for fair and
efficient adjudication of the controversy.

Fed. R. Civ. P 23(b)(1)-(3).

It is the burden of the party seeking class certification to show all of the

requirements under Rule 23 are met.  Valley Drug Co. v. Geneva Pharm., Inc.,

350 F.3d 1181, 1187 (11th Cir. 2003).  "Rule 23 grants courts no license to engage

in free-ranging merits inquiries at the certification stage,' and the merits of a suit

may be considered 'only to the extent' they pertain to the Rule 23 analysis."

Amgen Inc. v. Conn Retirement Plans & Tr. Funds, 568 U.S. 455 (2013).  The

court is nevertheless required to perform a "rigorous analysis" to ensure that

Rule 23's requirements are satisfied before certifying a class.  Gen. Tel. Co. v.

Falcon, 457 U.S. 147, 161 (1982).

C.     Motion for Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure provides that default

judgment may be entered against defaulting defendants as follows:

(1) ***By the Clerk.*** If the plaintiff's claim is for a sum certain or a sum that
can be made certain by computation, the clerk—on the plaintiff's
request, with an affidavit showing the amount due—must enter
judgment for that amount and costs against a defendant who has been

defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) **By the Court.** In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Fed. R. Civ. P. 55(b).

"[T]here is a strong policy of determining cases on their merits. . . . [Courts] therefore view defaults with disfavor." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "The entry of a default judgment is committed to the discretion of the district court." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)).

When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278

(11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988). If "the plaintiff has alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Id. at 1245. "[W]hile a defaulted defendant is deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975))

## III. DISCUSSION

### A. Motion to Amend

Plaintiffs explain in their Motion to Amend that the original Complaint incorrectly identified one of the Named Plaintiffs—"Shalece Upshur"—as "Shalece Veshur" due to a "scrivener's error." ([7.1] at 3). Plaintiffs contend that no substitution of parties is required since Ms. Upshur has been included from the outset and will remain a plaintiff. (Id. at 4). Plaintiffs conclude that "[t]he misnomer was the result of a good faith oversight by counsel," and "not the result of any bad faith," or "intended to confuse or prejudice Defendant." (Id. at 4-5).

Because Plaintiffs seek amendment after the period permitting amendment as a matter of course, they may only amend with Defendant's written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Since Defendant has not appeared or otherwise responded in this action, Plaintiff relies upon the Court for leave to amend. The Court finds no evidence of undue delay, bad faith, dilatory motive, undue prejudice, or likelihood of futility of amendment. Id.; see also Foman, 371 at 182. Considering the Court "should freely give leave when justice so requires," the Court grants Plaintiffs' Motion to Amend.

The Court finds further that the Amended Complaint relates back to the Original Complaint. The amendment permitted here is a simple name change of one of the Named Plaintiffs. The opposing party has received notice of the action and will not be prejudiced in defending on the merits. Fed. R. Civ. P. 15(c)(1)(C)(i). The Court also finds that the opposing party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

B.      Motion for Class Certification

Plaintiffs seek certification of the following class (the "Proposed Class") for the purpose of entering default judgment against Defendant:

> Any employee of Benchmark terminated on August 11, 2016[,] who was not given a minimum of sixty (60) days-notice of termination and

whose employment was terminated as a result of a "mass layoff" or "plant closing" as defined by the WARN Act and its interpretive regulations.

([9.1] at 2). Plaintiffs allege that on August 11, 2016, Defendant "laid off its entire workforce, consisting of at least 230 employees, in a covered 'plant closing' or mass layoff,' without providing those employees with the statutorily-required sixty (60) days-notice." (Id.). Plaintiffs contend the class is clearly defined and that Benchmark's payroll and financial records, with which certain Named Plaintiffs are familiar because of their former positions with Defendant, can easily be used to ascertain the identity of every member of the Proposed Class. (Id. at 8; see generally Declaration of Danese Simpkins [8.2] ("Simpkins Decl."); Declaration of Shalece Upshur [8.3] ("Upshur Decl.").

Plaintiffs argue that the Proposed Class is sufficiently numerous because it includes approximately 230 members residing in, at a minimum, two different states. ([9.1] at 10-11; see also [1.1] ¶ 27). Plaintiffs state: "The sheer number of members and their geographic disbursement makes joinder of all members impracticable." ([9.1] at 11). Plaintiffs further argue that, "[a]s a simple, straightforward WARN Act case, commonality is assured." (Id.). Plaintiffs contend that the "legal issues are limited—particularly in light of Benchmark's admissions—and those legal issues are common to *all* of the [Proposed] Class

members because Benchmark treated them identically." (Id. at 12). Plaintiffs assert that "[w]hether Benchmark's conduct violated the WARN Act is a common question identical to all putative class members." (Id.).

Plaintiffs argue that the typicality requirement is satisfied because "the Named Plaintiffs are, like all members of the [P]roposed [] Class, former Benchmark employees whose employment was terminated on August 11, 2016, without the advance warning required by the WARN Act." (Id. at 12-13). That is, the claims of the Named Plaintiffs and the [Proposed] Class members are identical. (Id.). Plaintiffs further allege that the Named Plaintiffs are interested and have vigorously pursued the action and have no conflicting interest with the members of the Proposed Class. ([9.1] at 15-16)

Plaintiffs argue finally that the Proposed Class satisfies Rule 23(b)(3), which provides class relief when questions of law or fact common to all class members predominate over individual issues, and the class action mechanism is superior to other available means of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Plaintiff asserts that Benchmark treated all members of the Proposed Class identically ([9.1] at 9).

Upon review of the record, the Court finds the Proposed Class is "adequately defined and clearly ascertainable." Little, 691 F.3d at 1303-04. The Declarations

of former Human Resources Director Danese Simpkins and former Payroll Manager Shalece Upshur plainly identify a list of each full time and permanent part-time employee employed by Defendant on August 11, 2016, for at least 120 days. (Simpkins Decl. ¶ 6; Upshur Decl. ¶ 6). The Declarations and attached business records also identify the hourly rate, location, and title of each individual employee. (Simpkins Decl. at 5-20; Upshur Decl. at 5-20). The allegations in the Complaint and the evidence provided in the record demonstrate that it will be straightforward and simple to fully identify those members of the Proposed Class.

The Court finds further that the Proposed Class meets the four requirements of Rule 23(a). Fed. R. Civ. P. 23(a). First, the Proposed Class consisting of 230 participants located in, at a minimum, Georgia and Tennessee, is so numerous that joinder of all members is impracticable. "As a general rule in the Eleventh Circuit, a prospective class with more than forty members is deemed to satisfy the numerosity requirement." Owens v. Metropolitan Life Insurance Company, 2:14-cv-74-RWS, 2017 WL 6302384, at *5 (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986); see also Moore's Federal Practice ¶ 23.05[1] at n.7 (1978) (stating that while there is no fixed numerosity rule, "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors"). Plaintiff therefore satisfies the numerosity

requirement. The Court also finds there are questions of law and fact common to the class. The specific legal issue presented here is whether Defendant's termination of 230 employees on August 11, 2016, without previous notice, violated the WARN Act. "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" Bussey v. Macon County Greyhouse Park, Inc., 562 F. App'x 782, 788 (11th Cir. 2014) (quoting Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982). The Court finds the commonality standard satisfied.

The Court next finds that Plaintiffs have sufficiently alleged typicality. "Traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000). In this case, it is evident that the Named Plaintiffs bare significant similarities to the members of the Proposed Class—they are all former Benchmark employees whose employment was terminated on August 11, 2016, without the advance warning required under the WARN Act. ([9.1] at 13).

It is also apparent that the Named Plaintiffs will adequately protect the interests of the Proposed Class. Eleventh Circuit precedent directs the Court to examine whether: (1) the named plaintiff is interested in and will vigorously

pursue the interests of the class; (2) the named plaintiff possesses interests that are not antagonistic to the interests of other class members; and (3) the proposed class counsel possesses the qualifications and experience to conduct the litigation. See Londen v. Walmart Stores, Inc., 340 F .3d 1246, 1254 (11th Cir. 2003); Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir .1987). Plaintiffs' participation in the matter and willingness to pursue the claim—notwithstanding Benchmark's default—shows they are actively participating and continuing to pursue their claims with vigor. It is further alleged that the Named Plaintiffs have no conflicting interest with the Proposed Class, no claim against Benchmark that is different from any of the Proposed Class members, and remain in "exactly the same position" as the rest of the members of the Proposed Class. ([9.1] at 16). Finally, counsel for the Proposed Class have submitted declarations demonstrating they are experienced and qualified in litigation complex class, including class action lawsuits. (Id. at 16-17; see generally Declaration of Joseph A. White, Esq. [9.2] ("White Decl."); Declaration of David S. Fried, Esq. [9.3] ("Fried Decl.").

The Court finds finally that Plaintiffs submit sufficient allegations to show common questions of law or fact predominate over any questions affecting only individual members as required by Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3). The elements of the claims of the Proposed Class are subject to the same statutory

interpretations and generalized proof. See Allapattah Services, Inc. v. Exxon Corp., 333 F.3d 1248, 1260 (11th Cir. 2003) (holding that, in general, where the representative and class claims are based on a common nucleus of fact and law, predominance is established). In other words, the legal and factual questions arise from the same conduct violating the same statute in the same manner with the same effect. Defendant terminated every member of the Proposed Class on the same date, in an admitted "mass layoff" or "plant closing," without providing them with advanced notice under the WARN Act. ([9.1] at 19). It is also clear that a class action in this matter is superior to any other methods of adjudication. The Court finds it would be uneconomical for Proposed Class members to individually litigate this matter. Plaintiffs also note that there are no other class actions against Benchmark concerning this claim, that Georgia is a desirable forum since Benchmark was headquartered here and certain Named Plaintiffs and Proposed Class members live in the area, and that the Proposed Class is manageable and the relief requested can be determined with mathematical precision. The Court agrees.

The Court concludes that class certification is appropriate at this juncture, and therefore grants Plaintiffs' Motion for Class Certification based on the Proposed Class defined above.

C.     Motion for Default Judgment

Plaintiffs argue in their Motion for Default Judgment that Defendant has not appeared in this case or otherwise responded to the Complaint, and, by defaulting, Defendant admits all well-pled allegations of the Complaint showing a single violation of the Warn Act occurred.  ([8.1] at 2).

The WARN Act "provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs."  20 CFR § 639.1(a).  "Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."  Id.

The WARN Act allows "aggrieved employees" who suffer an "employment loss" to file a civil action against an "employer" that orders a "plant closing" or "mass layoff" without giving its employees 60-days advance notice.  See 29 U.S.C. § 2104(a).  The Act specifically provides that "[a] person seeking to enforce such liability . . . may sue either for such person or for other persons similarly situated, or both, in any district court . . . in which the violation is alleged to have occurred, or in which the employer transacts business."  Id., § 2104(a)(5).

The Act defines an "aggrieved employee" as "an employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply [with the statutory notice requirement], did not receive timely notice . . . ." 29 U.S.C. § 2104(a)(7). This includes "managerial and supervisory employees, but does not include business partners." 20 C.F.R. § 639.3(e). The Act defines "employment loss," in relevant part, as an "employment termination, other than a discharge for cause, voluntary departure, or retirement." 29 U.S.C. § 2104(a)(6). The Act defines an "employer" as, *inter alia*, "any business enterprise that employs . . . 100 or more employees." 29 U.S.C. § 2101(a)(1)(A). The Act defines a "plant closing" to mean "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment." 29 U.S.C. § 2101(a)(2). The Act defines a "mass layoff," in relevant part, as a reduction in force (not the result of a plant closing) that "results in results in an employment loss at the single site of employment during any 30-day period for . . . at least 33 percent of the employees . . . and at least 50 employees." 29 U.S.C.A. § 2101(a)(3)(A)-(B).

The Court finds the Complaint sufficiently alleges a class-wide WARN Act violation. Plaintiffs allege that, on August 11, 2016, Defendant immediately

terminated all of its employees without providing any advance notice as required by the WARN Act. ([1] ¶¶ 6-7). Plaintiffs therefore constitute "aggrieved employees" who suffered "employment loss" within the meaning of the Act. See 29 U.S.C. §§ 2104(a)(5)-(7).

The Complaint further allege that Defendant employed at least 230 employees at facilities in Atlanta, Georgia, and Memphis, Tennessee, and that Defendant qualifies as an "employer" under the WARN Act. (Id. ¶¶ 3, 12, 27.) Defendant's August 11, 2016, Letter supplied to Plaintiffs upon their termination is further proof, and Defendant's own acknowledgement, that the WARN Act in fact applied to it. (Id; see also [1.2]). The Complaint further alleges that Defendant's mass layoff of its entire workforce on August 11, 2016—which resulted in the termination of all employees at Defendant's Georgia and Tennessee facilities—constituted a "plant closing" and/or "mass layoff" within the meaning of the Act. ([1] ¶¶ 2-3, 6, 12, 14, 18; see also [1.2]). The Complaint thus sufficiently alleges the Proposed Class members were entitled to receive, and Defendant was required to provide them with, sixty (60) days' advance notice of the mass layoff. (Id. ¶¶ 14, 19.) Benchmark acknowledges the existence of this obligation in its August 11, 2016, Letter. ([1.2]).

The Complaint alleges finally that, due to Defendant's failure to provide the statutorily-required notice, the Proposed Class members are entitled to recover from Defendant damages equal to the amount of wages and benefits they would have received during the sixty (60) day notice period. ([1] ¶¶ 1, 22.). The Complaint also alleges that the Judgment Class Members are entitled to recover prejudgment interest. (Id., Prayer for Relief, ¶ (b)).

The Court finds that the Complaint sufficiently alleges all of the elements of a WARN Act violation. It is plain that Plaintiffs and the Proposed Class are "aggrieved employees" who suffered an "employment loss" due to Defendant's ordering of a mass layoff/plant closing without providing its employees sixty (60) days advance notice. See 29 U.S.C. § 2104(a). Because Plaintiffs have "alleged sufficient facts to state a plausible claim for relief," a motion for default judgment is warranted. Surtain, 789 F.3d at 1246.

Plaintiffs have also demonstrated that it is unnecessary for the Court to conduct an evidentiary hearing to calculate the damages. The Complaint, Motion for Default Judgment, Declarations, and accompanying exhibits adequately show the claimed damages, that the damages are capable of precise mathematical calculation, and that the damages are reasonable. Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985) (finding that a

court may grant default judgment and award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation").

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Amend Complaint to Correct Misnomer [7] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification [9] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Default Judgment Against Defendant Benchmark Brands, Inc. [8] is **GRANTED** and this action is **DISMISSED**.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiffs, on behalf of themselves and the members of the Proposed Class, in the total amount of $2,482,922.06, plus $80.81 in daily prejudgment interest accrued from June 16, 2017, until the date of this Order, which represents: (a) $2,050,598.21 in back pay damages; (b) $289,552.33 in vacation pay damages; (c) $113,911.42 in medical benefits damages; (d) $3,970.00 in dental benefits damages; and (e) $24,890.10 in prejudgment interest plus $80.81/day from June 16, 2017, until the date of this Order.  Funds paid pursuant to this Judgment may not be distributed to class members without the specific approval of the Court.

**SO ORDERED** this 27th day of February, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE